**Myrna ROMBACH, on behalf of herself and all others similarly situated, Kevin Burdick, Jay Brosz, Eugene Bell, Dennis Bryan, Kenneth Hall, and Golfway Developments (Thunder Bay) Inc., on behalf of themselves and all others similarly situated, Plaintiffs–Appellants–Cross–Appellees,**

v.

**Dominic CHANG, Krishnan P. Thampi, Jeffrey C. Key, and Prudential Securities, Inc., Defendants–Appellees,**

**Jeffries & Co., Defendant–Appellee–Cross–Appellant.**

**Docket Nos. 02–7907(L), 02–7933(XAP).**

United States Court of Appeals, Second Circuit.

Argued: Jan. 30, 2003.

Decided: Jan. 20, 2004.

Ralph M. Stone, Shalov Stone & Bonner
LLP, New York, NY (John F. Carroll, Jr.,

on brief), for Plaintiffs–Appellants–Cross–Appellees.

Clifford Thau, Vinson & Elkins, LLP, New York, NY, for Defendants–Appellees.

Lisa Klein Wager, Morgan, Lewis & Bockius LLP, New York, NY (Adrienne M. Ward, on brief), for Defendant–Appellee–Cross–Appellant.

Before: JACOBS, CALABRESI, SOTOMAYOR, Circuit Judges.

JACOBS, Circuit Judge.

This putative securities class action is brought by investors who purchased stock in Family Golf Centers, Inc. ("Family Golf"), a now-bankrupt company that was in the business of acquiring and operating golf courses. Defendants were certain officers of the company and the underwriters of a secondary offering that was used in part to finance the acquisitions. Plaintiffs appeal from a judgment entered in the United Stated District Court for the Eastern District of New York (Johnson, *J.*) on July 31, 2002, dismissing their action with prejudice for failure to state a claim under Fed.R.Civ.P. 12(b)(6), failure to plead fraud with sufficient particularity under Fed.R.Civ.P. 9(b), and failure to state a claim under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4 (2000).

This appeal presents an issue of first impression in this Circuit: whether the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies to claims brought under Section 11 and Section 12(a)(2) of the Securities Act. We conclude that Rule 9(b) applies when the claim sounds in fraud.

## BACKGROUND

Family Golf, a publicly traded company since 1994, was a leading consolidator of golf centers; in 1998, it operated 119 golf facilities nationwide. Defendant Dominic Chang was chief executive officer, chairman of the board, and the largest stockholder; defendant Krishnan Thampi was president, chief operating officer, assistant secretary, treasurer, and a director; and defendant Jeffrey Key was chief financial officer (collectively, the "individual defendants").

By 1998, the company adopted a growth strategy of acquiring large golf course operators with multiple locations. Three such acquisitions were made that year: MetroGolf in January; Eagle Quest in June; and Golden Bear in July. In connection with the financing of these acquisitions, Family Golf conducted a secondary public offering on July 23, 1998. Defendants Jeffries & Company, Inc. and Prudential Securities, Inc. (collectively, the "underwriters") were underwriters and managers of the secondary offering. In the course of these transactions, Family Golf and its underwriters made several optimistic public statements that claimed success in the integration of newly-acquired facilities.

In February and March 1999, Family Golf announced lower than expected earnings and revenue for the fourth quarter of 1998, and its stock price soon plummeted by more than 43 percent. On August 12, 1999, it announced a net loss of six cents per share for the second quarter of 1999, and disclosed that it was in default on a number of financial obligations. The company filed for bankruptcy protection on May 4, 2000.

The plaintiffs purchased or otherwise acquired shares of Family Golf between May 12, 1998 and August 12, 1999 (the "Class Period"); a subclass purchased Family Golf stock in the secondary public offering. The initial complaint was filed in the Eastern District of New York on Feb-

ruary 16, 2000, and a Consolidated Amended Class Action Complaint was filed on July 17, 2000.[1] It is alleged that the company's finances had begun deteriorating months before the announcement of bad news and while the company and its underwriters were exuding confidence about its growth; that by September 1998, Family Golf was in a "liquidity crisis" that prevented it from making timely payments to vendors, insurers, and landlords; that the liquidity crisis "had the effect of systematically overstating [Family Golf's] publicly reported income"; and that the individual defendants and underwriters made several misrepresentations and omissions about Family Golf's financial performance and projected income to the effect that the newly-acquired golf facilities would be profitable even though they knew—or recklessly disregarded—that the company was having serious trouble digesting its large new acquisitions.

The complaint focuses most specifically on the following communications: (1) press releases indicating that integration of the new acquisitions was progressing smoothly; (2) a slide (entitled "Facility Economics Comparison") that was used in connection with the secondary offering; (3) analysts' reports (based on information provided by defendants) also noting that integration of the new acquisitions was progressing smoothly; and (4) the registration statement and prospectus for the secondary offering.

Plaintiffs undertake to plead five claims:

(1) That all defendants violated Section 11 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k (2000), by disseminating a registration statement for the secondary public offering that contained false and misleading statements and failed to state material facts;[2]

(2) That the underwriters violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), by soliciting the sale of shares in the secondary public offering based on a prospectus that contained false and misleading statements and failed to state material facts;[3]

(3) That the individual defendants were "control person[s] at Family Golf by virtue of their positions as directors and/or senior officers," and violated Section 15 of the Securities Act, 15 U.S.C. § 77o, by "having signed the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed";

(4) That the individual defendants violated Section 10(b) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) (2000), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, by "engag[ing] in a plan, scheme and course of conduct, pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices, and courses of business which operated

1. The original complaint named Family Golf as a defendant, but the company was omitted from the amended complaint after it filed for bankruptcy protection.

2. Section 11 of the Securities Act imposes civil liability on issuers and signatories, such as officers of the issuer and underwriters, of a registration statement that "contained an untrue statement of a material fact or omitted to

state a material fact ... necessary to make the statements therein not misleading." 15 U.S.C. § 77k.

3. Section 12(a)(2) of the Securities Act provides that a person who sells securities by means of a prospectus that misrepresents or omits material facts is liable to the person purchasing such security from him. 15 U.S.C. § 77l(a)(2).

as a fraud upon plaintiffs and other members of the Class"; [4] and

(5) That the individual defendants are "secondarily liable" as "controlling persons of the Company," pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for the violation of Section 10(b).

Defendants moved to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), failure to plead fraud with sufficient particularity under Fed.R.Civ.P. 9(b), and failure to state a claim under the PSLRA. The district court (Johnson, *J.*) granted defendants' motions and dismissed the complaint in its entirety with prejudice.

With regard to the claims against the individual defendants, the court ruled: that plaintiffs "fail to plead fraud with particularity on their § 10(b) and Section 11 claims" because their allegations "do not sufficiently explain how any of the statements attributed to Defendants are false or misleading," *Rombach v. Chang*, No. 00–CV–0958, 2002 WL 1396986, at *4, *7, 2002 U.S. Dist. LEXIS 15754, at *11–*12, *19 (E.D.N.Y. June 7, 2002); that plaintiffs failed to plead scienter, as required by the PSLRA, *id.* at *9, 2002 U.S. Dist. LEXIS 15754, at *23; and that as a consequence of those rulings, the "control person" claims pleaded under Section 15 and Section 20(a)—which are predicated on a primary violation of securities law— also fall, *id.* at *10, 2002 U.S. Dist. LEXIS 15754, at *29–*30.

The court dismissed all claims against the underwriters on the ground that be-

cause their "optimistic remarks about [Family Golf's] acquisition of the new facilities" included "substantial cautionary language and specific risk factors," *id.* at *13, 2002 U.S. Dist. LEXIS 15754, at *37, the statements were "protected by traditional 'bespeaks caution' doctrine and the safe harbor provided by the PSLRA," and that therefore the "allegations fail to show that any material statements or omissions attributed to Defendants were, in fact, misleading or false." *Id.*

Plaintiffs filed a timely notice of appeal to this Court. Defendant Jeffries & Company cross-appealed on the ground that the district court failed to make the Rule 11 findings required by the PSLRA, *see* 15 U.S.C. § 78u–4(c)(1), and that the district court erred in finding that the claims against the underwriters were not time-barred.

## DISCUSSION

This Court "review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiffs' favor." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir.2000). "We uphold a dismissal only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation and internal quotation marks omitted). Consideration is limited to the facts alleged in the complaint and any documents attached to the complaint or incorporated by reference. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

---

**4.** To state a cause of action under Section 10(b) and Rule 10b–5, a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury. *See San Leandro Emergency Med. Group Profit Sharing Plan v.*

*Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996). Neither Section 11 nor Section 12(a)(2) requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

### I

The district court concluded, as to the claims against the individual defendants, that plaintiffs failed to plead fraud with particularity sufficient to satisfy the requirements of Fed.R.Civ.P. 9(b) (regarding all claims brought against the individual defendants) and of the PSLRA (regarding the claims brought under Section 10(b)). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This Court has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993).

Similarly, the PSLRA, which applies in this respect only to claims brought under the Exchange Act, requires that any securities fraud complaint alleging misleading statements or omission of material fact must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

■ As the district court observed, the particularity requirement of Rule 9(b) applies to securities fraud claims brought under Section 10(b) and Rule 10b–5. *See*

*Ganino*, 228 F.3d at 168. The district court concluded that the same heightened pleading standard applies to securities claims brought under Section 11 and Section 12(a)(2) when premised on averments of fraud. We agree.

In deciding this issue, several circuits have distinguished between allegations of fraud and allegations of negligence, applying Rule 9(b) only to claims pleaded under Section 11 and Section 12(a)(2) that sound in fraud. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir.1992) ("[W]hen § 11 and § 12[ (a) ](2) claims are grounded in fraud rather than negligence, Rule 9(b) applies."); *Melder v. Morris*, 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) (Rule 9(b) applies when "Securities Act claims are grounded in fraud rather than negligence"); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990) (plaintiffs "fail[ed] to satisfy this 9(b) standard" applied to their Securities Act claims sounding in fraud where "their complaint [was] bereft of any detail concerning who was involved in each allegedly fraudulent activity, how the alleged fraud was perpetrated, or when the allegedly fraudulent statements were made"); *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1404–05 (9th Cir.1996) ("[T]he particularity requirements of Rule 9(b) apply to claims brought under Section 11 when, as here, they are grounded in fraud."). There is dicta in two other circuits along the same lines.[5]

The Eighth Circuit, however, has categorically held that "the particularity requirement of Rule 9(b) does not apply to

---

**5.** *Accord Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir.1996) (dictum) ("[I]f a plaintiff·were to attempt to establish violations of Sections 11 and 12[a](2) as well as the anti-fraud provisions of the Exchange Act through allegations in a single complaint of a unified course of fraudulent conduct ... the particularity requirements of Rule 9(b) would probably apply to the Sections 11; 12[a](2),

and Rule 10b–5 claims alike."); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997) ("[a]ssuming without deciding" that the approach set out by the Third Circuit in *Shapiro* applies, and holding that "the § 11 claim in the case at bar ... does not trigger Rule 9(b) scrutiny" because it "is not premised on fraud").

claims under § 11 of the Securities Act, because proof of fraud or mistake is not a prerequisite to establishing liability under § 11." *In re NationsMart Corp. Secs. Litig.*, 130 F.3d 309, 314 (8th Cir.1997). The court reasoned that "a pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports neither with Supreme Court precedent nor with the liberal system of 'notice pleading' embodied in [Fed.R.Civ.P. 8(b) ]." *Id.* at 315. In this Circuit, the several district courts that have considered this issue have split on its resolution.[6]

We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud. By its terms, Rule 9(b) applies to "all averments of fraud." Fed.R.Civ.P. 9(b). This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action. Fraud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2); at the same time, claims under those sections may be—and often are—predicated on fraud. The same course of conduct that would support a Rule 10b–5 claim may as well support a Section 11 claim or a claim under Section 12(a)(2). So while a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon aver-

ments of fraud are subject to the test of Rule 9(b).

The particularity requirement of Rule 9(b) serves to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (internal quotation marks omitted); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) ("Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case."); *In re Stac Elecs. Secs. Litig.*, 89 F.3d at 1405 ("Rule 9(b) serves to . . . prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.") (internal quotation marks and alteration marks omitted). These considerations apply with equal force to "averments of fraud" set forth in aid of Section 11 and Section 12(a)(2) claims that are grounded in fraud.

## II

We next consider whether the Section 11 and Section 12(a)(2) claims asserted by plaintiffs in this case sound in negligence or in fraud. The district court concluded that the plaintiffs' claims against the individual defendants sound in fraud and that the claims against the underwriters sound

---

**6.** *See Griffin v. PaineWebber Inc.*, 84 F.Supp.2d 508, 513 (S.D.N.Y.2000) (Sweet, *J.*) (listing cases). *Compare In re Ultrafem Inc. Secs. Litig.*, 91 F.Supp.2d 678, 690 (S.D.N.Y. 2000) (Preska, *J.*) (adopting rule that 9(b) applies to Section 11 and Section 12(a)(2) "where the complaint is grounded in fraud"); *Ellison v. Am. Image Motor Co.*, 36 F.Supp.2d 628, 639 (S.D.N.Y.1999) (Chin, *J.*) (same);

*Schoenhaut v. Am. Sensors, Inc.*, 986 F.Supp. 785, 795 (S.D.N.Y.1997) (Jones, *J.*) (same); *with In re In–Store Adver. Secs. Litig.*, 878 F.Supp. 645, 650 (S.D.N.Y.1995) (Leisure, *J.*) (finding Rule 9(b) inapplicable); *Nelson v. Paramount Communications, Inc.*, 872 F.Supp. 1242, 1246 (S.D.N.Y.1994) (Motley, *J.*) (same).

in negligence. *Rombach,* 2002 WL 1396986, at *4, 2002 U.S. Dist. LEXIS 15754, at *10–*11. We agree.

Plaintiffs assert that their Section 11 claims "do[ ] not sound in fraud" but the wording and imputations of the complaint are classically associated with fraud: that the Registration statement was "inaccurate *and* misleading;" that it contained "*untrue* statements of material facts;" and that "materially *false* and *misleading* written statements" were issued. A panel of the Ninth Circuit rejected a similar effort to characterize claims by the label used in the pleading: "[t]hese nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the Prospectus." *In re Stac Elecs. Secs. Litig.,* 89 F.3d at 1405 n. 2; *see also In re Ultrafem,* 91 F.Supp.2d at 690–91 (applying Rule 9(b) where "plaintiffs [made] little, if any, effort to differentiate their asserted negligence claims from the fraud claims which permeate the Complaint ... [and] merely disavow[ed] any allegations that would make Rule 9(b) applicable ... without specifying the allegations that would support a negligence cause of action.").

■ To meet the pleading standard of Rule 9(b), this Court has repeatedly required, among other things, that the pleading "explain why the statements were fraudulent." *Mills,* 12 F.3d at 1175. The PSLRA imposes similar requirements to claims brought under the Exchange Act: "the complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). We agree with the district court

that the complaint does not "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made," and therefore fails the tests of Rule 9(b) and the PSLRA.[7] *Rombach,* 2002 WL 1396986, at *4, 2002 U.S. Dist. LEXIS 15754, at *11–*12. We will address in turn each of the four categories of statements that plaintiffs allege to be "false" or "misleading."

■ (A) *The Press Releases.* Family Golf issued six press releases between May 1998 and March 1999. Plaintiffs contend that various statements made therein were misleading because they failed to disclose or accurately represent the company's integration and liquidity problems. They cite statements that the integration of Family Golf's new sites was "well underway" and progressing smoothly, assurances given at the same time defendants knew of problems with the integration of operations and computer systems.

Although the complaint catalogs a number of statements made by the individual defendants, nothing in the complaint explains with adequate specificity how those statements were actually false or misleading. The first two press releases in question—issued in May and June 1998—were released a few months after Family Golf's acquisition of the MetroGolf facility in January, and before consummation of the other large acquisitions in question (Eagle Quest in late-June and Golden Bear in mid-July). These early statements concerning the integration of the facilities therefore appear to have been forward-looking. As time went on, the upbeat tone of Family Golf's press releases grew hedged and guarded. For example, the August 1998 press release stated that "to-

---

7. The test for whether a statement is materially misleading under Section 10(b) and Section 11 is "whether the defendants' representations, taken together and in context, would

have misled a reasonable investor." *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir.1991) (internal brackets omitted).

tal revenue for the four Eagle Quest centers decreased by 25 percent in the [second] quarter," and that "[t]he results of the four Eagle Quest centers were significantly impacted by their shortage of working capital and lack of quality balls, hitting mats and pro shop merchandise." The February 1999 press release stated that while the company was "optimistic" about the future performance of the newly acquired facilities, it "is clear that more than likely they [would] continue to underperform in the near-term." Optimism continued to abate in subsequent press releases, including a March 1999 statement that the company was "disappointed at the contribution of many of the more recently acquired sites this quarter, [but was] likewise working hard to complete the integration of [these sites]."

■ These statements, as the district court held, are optimistic statements protected by the "bespeaks caution" doctrine and the PSLRA's safe harbor. Under the bespeaks caution doctrine, "alleged misrepresentations in a stock offering are immaterial as a matter of law [if] it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.,* 295 F.3d 352, 357 (2d Cir. 2002). When there is cautionary language in the disclosure, the Court analyzes

the allegedly fraudulent materials in their entirety to determine whether a reasonable investor would have been misled. The touchstone of the inquiry is not whether isolated statements within a document were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor

regarding the nature of the securities offered.

*Id.*

In the PSLRA, a counterpart safe-harbor provision provides (in pertinent part) that an issuer or underwriter

shall not be liable with respect to any forward-looking statement ... if and to the extent that (A) the forward-looking statement is (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or (ii) immaterial ....

15 U.S.C. §§ 77z–2(a) & (c)(1), 78u–5(a) & (c)(1).

■ The bespeaks caution doctrine does not serve if it is abused or gamed. Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired. *See In re Prudential Secs. Inc. P'ships Litig.,* 930 F.Supp. 68, 72 (S.D.N.Y.1996) ("The doctrine of bespeaks caution provides no protection to someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away."). Plaintiffs identify a handful of incidents in which Family Golf did not pay creditors, did not execute construction or operational projects, and had problems integrating newly acquired properties into their national system, but these allegations do not support an inference that the company was in trouble. A company that operates 119 separate facilities nationwide is bound to have problems assimilating this or that property, to have disputes over payments with vendors and landlords, and to have some bills unpaid by reason of contested amounts or spot episodes of illiquidity; the allegations in the complaint are consistent with unremarka-

ble circumstances short of financial peril or instability.[8]

■ Further, as the district court observed, expressions of puffery and corporate optimism do not give rise to securities violations. *Rombach,* 2002 WL 1396986, at *5, 2002 U.S. Dist. LEXIS 15754, at *13. Up to a point, companies must be permitted to operate with a hopeful outlook: "People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1129–30 (2d Cir.1994). To succeed on this claim, plaintiffs must do more than say that the statements in the press releases were false and misleading; they must demonstrate with specificity why and how that is so. We agree with Judge Johnson's assessment that plaintiffs fail to allege with particularity any actual falsity in defendants' press releases.

(B) *"Facility Economics Comparison" Slide.* Plaintiffs allege that a slide that was prepared and used by defendants in connection with the July 1998 secondary public offering "falsely portrayed the Company's growth and profitability by materially overstating the 'economics' of its 'facilities.'"[9] The district court observed, however, that the "slide is unclear on its face as to whether the figures represent actual historical revenues generated or projections for future earnings." *Rombach,* 2002 WL 1396986, at *6, 2002 U.S.

Dist. LEXIS 15754, at *17. The slide is undated and there is no indication of the time period to which the given data is relevant.

[8] To show that Family Golf was overstating its financial position at the time the slide was utilized, the complaint cites 1997 revenue data for four Class II golf centers as a point of comparison. However, no source is given for this data, and it is wholly unclear why data relating to four facilities can be deemed representative of Family Golf's 115 other facilities, or material to the company's overall financial condition. We agree with the district court that there is nothing in the complaint that links the actual and projected revenues of these four facilities to plaintiffs' claim that the financial projections contained in the slide are false or misleading. Plaintiffs therefore do not plead fraud with the requisite particularity in relation to the "Facility Economics Comparison" slide.

■ (C) *Analysts' Reports.* Plaintiffs allege that the individual defendants disseminated misleading earnings projections and statements about Family Golf's integration efforts to analysts, and that this misinformation found its way into several analysts' reports. There are two ways to state a claim against corporate officers for false and misleading statements contained in an analyst report: the complaint can allege that the officers either "(1) 'intentionally foster[ed] a mistaken belief concerning a material fact' that was incorporated into reports; or (2) adopted or

8. As the district court noted, Family Golf did not seek bankruptcy protection until May 2000, which belies the urgency of any "liquidity crisis" during the class period (May 1998 to August 1999). *Cf. In re Ultrafem,* 91 F.Supp.2d at 700 (holding that plaintiffs stated no claim with respect to the extent of defendant's working capital because the "[c]omplaint acknowledge[d] that [the Com-

pany's] capital lasted for nearly fifteen months, clearly negating any claim of misrepresentation").

9. The slide is a single page that compares an unnamed ice rink facility to unnamed "Class I" and "Class II" golf centers in terms of costs, revenues, expenses, and profit margin.

placed their 'imprimatur' on the reports." *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir.2000) (alterations in original) (quoting *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 163–64 (2d Cir.1980)). Plaintiffs' claim is based on the active fostering of error rather than imprimatur.

Plaintiffs sufficiently allege that defendants intentionally fostered the mistaken beliefs expressed in the reports. For example, the complaint alleges that the analysts' reports were "based on specific information from defendants" and "were derived from internal budget information furnished to the respective analysts by defendants Key and Thampi."[10] But the complaint fails to explain why the information in the analysts' reports was, in fact, fraudulent. Like the press releases, the analysts' reports contain financial projections and statements of guarded optimism. But, as set forth above, "puffery" or "misguided optimism" is not actionable as fraud. To meet the pleading requirement of Rule 9(b), plaintiffs cannot rest on their say-so that these statements are fraudulent; they must explain why. Having neglected to do so, they fail to plead with the requisite particularity.

■ (D) *Registration Statement.* Finally, the complaint alleges that the individual defendants issued a false or misleading registration statement in violation of Section 11 of the Securities Act. We analyze the allegations regarding the registration statement in light of the Section 10(b) claims as well, because the Section 10(b) count incorporates as though fully set forth therein the allegations contained in the Section 11 count. Plaintiffs do not identify any materially false statements in the registration statement that were false or misleading when made. Plaintiffs, rather, simply allege generally that the registration statement "failed to disclose that the [secondary] Offering was necessitated by pressure from the Company's lenders and its deteriorating cash position, and it failed to disclose that the integration of recently acquired sites was proceeding poorly and that the Company was experiencing operation problems associated with these acquired properties."

Such allegations, however, are undercut by the fact that the offering documents either did not omit such information or contained sufficient cautionary language to bespeak caution and trigger the safe harbor provision of the PSLRA. As the district court noted, the offering documents contained cautionary language and information about the financial risks, including:

- that the company experienced a net loss of $3.6 million for fiscal year 1997, based on historical financials consolidated to reflect the 1998 acquisitions, and a net loss of $1.7 million for the first quarter of fiscal year 1998;

- that some Family Golf facilities had "experienced losses;"

- that "no assurance" could be given that additional facilities would be "readily integrated into the Company's operating structure;"

- that the company had lower cash reserves in 1998 than in 1997;

---

**10.** The district court viewed these allegations as insufficient because plaintiffs failed to "indicate when and where these statements were made." *Rombach,* 2002 WL 1396986, at *8, 2002 U.S. Dist. LEXIS 15754, at *22. However, we agree with plaintiffs that the district court's approach would require them to specifically allege the method by which defendants conveyed the fraudulent information to the analysts; at least at this early stage in the litigation, that information is likely to be exclusively within the control of defendants and the analysts.

- that there existed a "need to raise substantial additional capital" for continued long-term expansion, and the caution that there was "no assurance" Family Golf would be able to raise enough;

- that the company had a $180 million debt, coupled with the admonition that there was "no assurance" the company would be able to generate sufficient cash to service that debt; and

- that the company's past performance was "not necessarily indicative of future results."

While some of these cautionary statements were formulaic, we conclude that as a whole they provided a sobering picture of Family Golf's financial condition and future plans.

\*　　\*　　\*　　\*　　\*　　\*

Although the allegations of the relevant claims against the individual defendants sound in fraud, they may also recite some or all of the elements of a claim for negligence. But for the fact that such a negligence claim, if properly pleaded, would be defeated in any event by the bespeaks caution doctrine, we might well affirm the dismissal with a direction to the district court to entertain a motion to re-plead in terms of negligence. *Cf. Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368–69 (5th Cir.2001) (courts are not "required to sift through allegations of fraud in search of some 'lesser included' claim of strict liability," and instead should dismiss and permit counsel to offer an amended claim "that either pleads with the requisite particularity or drops the defective allegations and still states a claim").

### III

■ The district court also based its dismissal of the claims against the individ-

ual defendants on the failure to plead scienter. To state a claim for securities fraud, the PSLRA requires that plaintiffs "state with particularity [the] facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). In order to satisfy this requirement, "a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000); *see also Novak*, 216 F.3d at 310.

■ Plaintiffs contend that the complaint pleads conscious or reckless misbehavior because (1) it alleges that Family Golf faced a liquidity crisis during the relevant period; (2) it describes examples of Family Golf's failure to pay vendors and meet financial obligations; (3) it alleges "a pervasive culture of misinformation at the Company"; and (4) it describes the individual defendants' access to financial information and computer systems. However, none of these allegations suffices to demonstrate conscious or reckless misbehavior.

■ As this Court has observed, a "pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent" is insufficient to "support the inference that the defendants acted recklessly or with fraudulent intent." *Shields*, 25 F.3d at 1129. Plaintiffs do not allege facts and circumstances that would support an inference that defendants knew of specific facts that are contrary to their public statements. Further, the allegation that defendants behaved recklessly is weakened by their disclosure of certain financial problems prior to the deadline to file its financial statements. For example, the company revealed problems with the Eagle Quest acquisition and the company's low earnings well in advance of the dead-

line for filing its 1998 Form 10–K. *See In re Nokia Corp. Secs. Litig.*, No. 96–CIV–3752, 1998 WL 150963, at *13 (S.D.N.Y. Apr.1, 1998) ("If anything, the fact that [defendant] voluntarily chose to issue a press release earlier than its standard year-end reporting ... undercuts the allegation that defendants were acting recklessly.").

Plaintiffs rely chiefly on three allegations to demonstrate motive and opportunity. However, while opportunity may not be in dispute, none of these allegations adequately demonstrates motive.

(1) The complaint describes several corporate acquisitions and a secondary public offering worth nearly $100 million, which were purportedly part of an effort to "artificially inflate and maintain the market price of [Family Golf] common stock" and to "complete a previously arranged corporate acquisition of Eagle Quest and to retire debt." However, as the district court noted, plaintiffs nowhere allege that defendants engaged in these transactions to secure personal gain. Instead, the district court found that "these steps are part of the officers' and directors' financial responsibilities to the Company." *Rombach*, 2002 WL 1396986, at *9, 2002 U.S. Dist. LEXIS 15754, at *24. Action taken to "maintain the appearance of corporate profitability, or of the success of an investment ... does not entail concrete benefits" sufficient to demonstrate motive. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir.1996) (internal quotation marks omitted). Even if the complaint is read to say that defendants artificially inflated Family Golf's stock price to increase their personal compensation (by undertaking the cited transactions or otherwise), the complaint would still fail to allege the requisite motive: "If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995).

(2) The complaint mentions a corporate jet that Family Golf leased from a company affiliated with defendant Chang. This fact, standing alone, is insufficient to establish motive. The nature of Chang's "affiliation" with the jet-leasing company is unspecified, and there is no indication that he stood to profit substantially from the arrangement. This allegation does not give rise to a "strong inference of fraudulent intent." *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir.1996).

(3) The complaint alleges that individual defendants purchased large amounts of Family Golf stock after the price collapsed. Plaintiffs do not allege that defendants sold stock or profited in any way during the relevant period. To the contrary, defendants were among Family Golf's largest shareholders and shared the pain when the company failed. Finally, there is no explanation as to how defendants' post-collapse purchase of Family Golf stock, which is now worthless, benefited them in any way.

In short, the complaint identifies no personal interest sufficient to establish motive, and the district court properly concluded that plaintiffs' complaint against individual defendants must be dismissed for failure to plead scienter.

The remaining claims against the individual defendants invoke "control person" liability—one claim under Section 15 of the Securities Act, and another under Section 20(a) of the Exchange Act. Each of these claims is necessarily predicated on a pri-

mary violation of securities law. Because we have already determined that the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims must also be dismissed. *See SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1472–73 (2d Cir.1996) ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person."); *Shields,* 25 F.3d at 1132 (finding no error in district court's dismissal of Section 20 secondary liability claims where "the primary violation asserted by [plaintiff was] not adequately pleaded").

## IV

The complaint alleges that the underwriters violated Section 11 and Section 12(a)(2) of the Securities Act, both of which create liability for untrue statements of material fact in connection with the sale of securities. *See* 15 U.S.C. § 77k(a) (dealing with registration statements); 15 U.S.C. § 77*l*(a)(2) (dealing with prospectuses). These claims are not subject to the heightened pleading requirements of Rule 9(b), because they sound in negligence: "each of the Underwriter Defendants owed to the purchasers of the shares of [Family Golf] ... the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus."[11]

As discussed in relation to the Section 11 and Section 10(b) claims against the individual defendants, the registration

statement and prospectus in question are protected by the bespeaks caution doctrine and by the safe harbor provision of the PSLRA. *See supra* Part II. Accordingly, we uphold the dismissal of all counts against the underwriters.[12]

## V

The PSLRA mandates that, at the end of any private securities action, the district court must "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C. § 78u–4(c)(1); *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 167 (2d Cir.1999) (noting that the PSLRA "functions ... to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all"). And, if the court finds that any party or lawyer violated Rule 11(b), the PSLRA mandates the imposition of sanctions. *See* 15 U.S.C. § 78u–4(c)(2).

Neither the district court's Memorandum and Order nor its judgment made the required Rule 11 findings. Without intimating a view as to the merits of any Rule 11 issue, we remand to the district court for compliance with the PSLRA.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court, and remand for Rule 11 findings.

---

**11.** The test for whether a statement is materially misleading under Section 12(a)(2) is identical to that under Section 10(b) and Section 11: whether representations, viewed as a whole, would have misled a reasonable investor. *See I. Meyer Pincus & Assoc.,* 936 F.2d at 761.

**12.** Defendants argue on cross-appeal that plaintiffs had inquiry notice sufficient to place their complaint outside the PSLRA's one-year statute of limitations. Because we affirm the district court's dismissal of all counts against the defendants, resolution of this issue will have no effect on the disposition of the case and we decline to address it.