*Plymouth Cnty. Ret. Ass'n. v. Array Techs., Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of March, two thousand twenty-six.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

_____

PLYMOUTH COUNTY RETIREMENT ASSOCIATION, Individually and on Behalf of All Others Similarly Situated, CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,

     *Plaintiffs-Appellants*,

JULIAN KEIPPEL,

     *Plaintiff*,

   v.             No. 23-1122

ARRAY TECHNOLOGIES, INC., JIM FUSARO, NIPUL PATEL, TROY ALSTEAD, ORLANDO D. ASHFORD, FRANK CANNOVA, RON P. CORIO, BRAD FORTH, PETER JONNA, JASON LEE, ATI INVESTMENT

PARENT, LLC, ATI INTERMEDIATE HOLDINGS, LLC, OAKTREE ATI INVESTORS, L.P., OAKTREE POWER OPPORTUNITIES FUND IV, L.P., OAKTREE POWER OPPORTUNITIES FUND IV (PARALLEL), L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, GUGGENHEIM SECURITIES, LLC, CREDIT SUISSE SECURITIES (USA) LLC, BARCLAYS CAPITAL INC., UBS SECURITIES LLC, COWEN AND COMPANY, LLC, OPPENHEIMER & CO. INC., JOHNSON RICE & COMPANY L.L.C., ROTH CAPITAL PARTNERS, LLC, PIPER SANDLER & CO., MUFG SECURITIES AMERICAS INC., NOMURA SECURITIES INTERNATIONAL, INC., MORGAN STANLEY & CO. LLC,

*Defendants-Appellees.*

---

| | |
|---|---|
| **For Plaintiffs-Appellants:** | THOMAS G. HOFFMAN, JR. (Michael P. Canty, James T. Christie, Labaton Keller Sucharow LLP, New York, NY, Andrew S. Love, Robbins Geller Rudman & Dowd LLP, San Francisco, CA, *on the brief*), Labaton Keller Sucharow LLP, New York, NY. |
| **For Defendants-Appellees Array Technologies and ATI Intermediate Holdings, LLC:** | LISA H. BEBCHICK (Peter L. Welsh, *on the brief*), Ropes & Gray LLP, New York, NY. |
| **For Defendants-Appellees Jim Fusaro, Nipul Patel, Troy Alstead, Orlando D. Ashford, Ron P. Corio, and Brad Forth:** | Robert A. Sacks, Sullivan & Cromwell LLP, New York, NY. |
| **For Defendants-Appellees Frank Cannova, Peter Jonna, Jason Lee,** | Stefan Atkinson, Amal El Bakhar, Kirkland & Ellis LLP, New York, NY. |

ATI Investment Parent, LLC,
Oaktree ATI Investors, L.P., Oaktree
Power Opportunities Fund IV, L.P.,
and Oaktree Power Opportunities
Fund IV (Parallel), L.P.:

| | |
|---|---|
| **For Defendants-Appellees Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Guggenheim Securities, LLC, Credit Suisse Securities (USA) LLC, Barclays Capital Inc., UBS Securities LLC, Cowen and Company, LLC, Oppenheimer & Co. Inc., Johnson Rice & Company L.L.C., Roth Capital Partners, LLC, Piper Sandler & Co., MUFG Securities Americas Inc., Nomura Securities International, Inc., and Morgan Stanley & Co. LLC:** | Jay B. Kasner, Scott D. Musoff, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, Abigail E. Davis, Skadden, Arps, Slate, Meagher & Flom LLP, Houston, TX. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 5, 2023 judgment of the district court is **AFFIRMED**.

Plymouth County Retirement Association and the Carpenters Pension Trust Fund for Northern California (collectively, the "Investors") appeal from a

judgment of the district court dismissing their federal-securities claims and denying them leave to amend. In essence, the Investors allege that Array Technologies, Inc. ("Array") – a manufacturer of solar panels – and its officers, directors, former shareholders, and underwriters made various false and misleading statements regarding the impact of rising steel costs on Array's business, in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Standard of Review

We review *de novo* a district court's dismissal for failure to state a claim, "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

"Any complaint alleging securities fraud must [also] satisfy the heightened pleading requirements" of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Id.* Rule 9(b) mandates that "averments of fraud 'be state[d] with particularity.'" *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting Fed. R. Civ. P. 9(b)). That means that plaintiffs must "(1) specify the statements that [they] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (internal quotation marks omitted). The PSLRA has similar but distinct requirements: plaintiffs must "'specify' each misleading statement"; "set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'"; and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(1), (2)).

Finally, we "review . . . *de novo*" a district court's denial of leave to amend when the denial is "based on . . . [the] futility" of the amendment. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

## II.      Exchange Act Claims

To state a claim under section 10(b) and its implementing rule – Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b-5 – a plaintiff must, as a threshold matter, allege that the defendant "made misstatements or omissions of material fact." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 149 (2d Cir. 2021) (internal quotation marks omitted). "The test for whether a statement is materially misleading under Section 10(b) is not whether the statement is misleading in and of itself, but whether the defendants' representations, *taken together and in context*, would have misled a reasonable investor." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (internal quotation marks omitted). "[A] complaint fails to state a claim of securities fraud if *no reasonable investor* could have been misled about the nature of the risk when he invested." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002).

On appeal, the Investors contend that two sets of statements constituted material misstatements or omissions: (i) Array's risk disclosures concerning steel and freight prices, and (ii) comments that then-Chief Financial Officer Nipul Patel made regarding Array's ability to pass such costs on to its customers. We agree

6

with the district court that no reasonable investor would have been misled by either.

## A. Risk Disclosures

The Investors first challenge the risk disclosures that Array included in the documents associated with its securities offerings (the "Offering Materials"). These disclosures generally explained that increased commodities prices *"**could*** reduce [Array's] operating margins ***if*** [Array were] unable to recover such increases from [its] customers." J. App'x at 82 (emphases in original); *see id.* at 89–90. According to the Investors, such statements were materially false because "they cast rising costs as merely hypothetical risks," when steel prices had, in fact, already significantly risen, and Array had been unable to recover those increased costs from its customers. Investors' Br. at 31.

But the Investors do not allege "with specificity why and how" the risk disclosures were false when they were made. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). The complaint alleges only that rising steel prices were – at the time of the disclosures – "*already* having a material impact on project costs that the Company would be unable to recover from its customers." J. App'x at 82, 84–85.

7

As the district court recognized, the Investors do not provide any more specific context; instead, they simply "repeat this formula nearly verbatim for each of the . . . statements they challenge" – even though those statements spanned several months. Sp. App'x at 24. Nowhere does the complaint explain in any detail (i) the nature and extent of any price increases, (ii) the impact that they had on Array's margins, or (iii) how and why Array could not recover these particular costs from its customers.

In fact, far from misleading the Investors, Array's disclosures "materially informed" them about the company's exposure to rising steel prices. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021); *see also Halperin*, 295 F.3d at 361 ("The allegedly omitted facts were either disclosed or implied in the offering memoranda."). The disclosures warned that Array's "product costs [were] affected by the underlying cost of raw materials, including steel and aluminum," J. App'x at 217, that "fluctuations in steel and aluminum prices" were a "primar[y]" cause of Array's "market risk exposure," *id.* at 230, and that Array "d[id] not currently hedge against changes in the price of raw materials," *id.* at 217;

8

*see also id.* at 231. Accordingly, the Investors fail to allege that Array's disclosures contained any material misstatements.

**B.      Defendant Patel's March 9, 2021 Earnings Call Statements**

For similar reasons, the Investors' allegations regarding Patel's purported misstatements made during a March 9, 2021 earnings call also fail to state a claim. The Investors assert that Patel's statements – including that "[Array's] contracts allow [it] to pass on [increased commodity and freight] costs to [its] customers" – created the "false impression" that Array was "insulated" from such price increases. Investors' Br. at 34–35 (internal quotation marks omitted). But Patel's remarks – when taken in context – hardly suggested that Array had the ironclad ability to pass on its costs in all circumstances.

The earnings call accurately apprised the Investors of the nature of the risks that Array faced, and of its possible – but uncertain – ability to mitigate some of those risks by shifting them to customers. In response to a question regarding when Array would "consider[] passing [commodity and freight costs] on to customers," Patel indicated that the Company was "always evaluating all pricing on our projects" and would consider passing through costs "on a case-by-case

basis." J. App'x at 957. On the same call, Patel also acknowledged that rising commodities prices had generally "increased significantly over the past several months," *id.* at 947, and that Array "ke[pt] very little inventory" on hand and instead ordered materials post-contracting, *id.* at 956. Meanwhile, then-CEO James Fusaro directly confirmed that Array faced "pressure on margins from cost inputs." *Id.* at 953.

To be sure, Patel also incidentally noted that "our contracts allow us to pass on . . . costs to our customers." *Id.* at 947. But no reasonable investor would have construed Patel's remark as a watertight (and commonsense-defying) guarantee regarding all of Array's contracts: as discussed above, the March earnings call made abundantly clear that Array faced serious risks from rising steel prices and that it was evaluating its contracts "on a case-by-case basis." *Id.* at 957. And Array repeatedly and expressly clarified that it faced "market risk exposure . . . primarily [as] a result of fluctuations in steel and aluminum prices." *Id.* at 230; *see also id.* at 217, 231.

Furthermore, as the district court noted, the Investors' complaint leaves it "murky at best [as to] how [Patel's] statements [we]re false or misleading." Sp.

10

App'x at 36. And while the Investors attempted to fix this problem by amending their complaint to add confidential witnesses' allegations that "in many instances" Array would *not* be able to pass on costs, the district court correctly concluded that "[t]hese new allegations remain deficient even if accepted as true" because they lack sufficient "particularity." *Id.* at 61–62 (internal quotation marks omitted). After all, the confidential witnesses' vague statements did not indicate "[h]ow many contracts . . . Array ha[d]," "[h]ow many contracts contained the fixed price language," and whether that number was "[a] majority," "[n]early all," "[l]ess than a quarter," or some other percentage. *Id.* at 62.

Finally, Array's risk disclosures explained that Array might suffer financial harm "*if* [it were] unable to recover [price] increases from [its] customers." J. App'x at 82. The word "if" clearly indicates that Array's ability to "recover" was contingent on market forces and purchasing decisions made by third parties. *Id.* As such, "defendants' representations, *taken together and in context*," would not "have misled a reasonable investor." *Vivendi*, 838 F.3d at 250 (internal quotation marks omitted).

11

## III.     Securities Act Claims

The Investors also pursue claims under sections 11 and 12 of the Securities Act.  "Section 11 . . . imposes liability on issuers and other signatories of a registration statement that . . . 'contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'"  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (quoting 15 U.S.C. § 77k(a)).  Meanwhile, section 12(a) creates "similar" liability for "issuers or sellers of securities by means of a prospectus."  *Id.* (citing 15 U.S.C. § 77*l*(a)(2)).

The Investors base their Securities Act claims primarily on Array's obligations under Item 303 of Regulation S–K, which requires issuers of securities to "[d]escribe any known trends or uncertainties that have had or that [they reasonably expect will] have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(b)(2)(ii).  According to the Investors, the Offering Materials did not satisfy Item 303 because they failed to "disclose whether, and to what extent, the

12

known trends of rising steel and freight costs were reasonably likely to negatively impact Array." Investors' Br. at 54. We again disagree.[1]

For an issuer to be liable under Item 303, it must omit information that was "material for the purpose of Item 303 and, in turn, for the purpose of Sections 11 and 12(a)(2)." *Litwin*, 634 F.3d at 716. Information qualifies as "material" only if "a reasonable investor would have considered [it] significant in making investment decisions." *Id.* at 717 (internal quotation marks omitted). In analyzing the materiality of the omitted information, we consider whether its inclusion would have "significantly altered the 'total mix' of information made available." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)).

Any omission in Array's disclosures was immaterial because a reasonable investor would not have viewed the allegedly missing information as significant.

---

[1] The Investors also point to the risk disclosures underlying their section 10(b) claims. However, as discussed above, those disclosures contained no material misrepresentations or omissions. And while the parties dispute whether their Securities Act claims must meet the ordinary pleading standards set forth in Federal Rule of Civil Procedure 8(a), or the heightened requirements of Rule 9(b) – given that those claims arguably "sound in fraud," *Rombach*, 355 F.3d at 170–71 – we need not answer that question because the Investors fail to allege a materially false statement or omission under either standard.

As the district court explained, the "minutiae of steel futures trends was not material, given the total mix of information available to investors, including information already in the public domain." Sp. App'x at 53–54 (internal quotation marks omitted). This "publicly available information" already "made clear that steel prices were atypically (even unprecedentedly) high." *Id.* at 32.

Furthermore, Array itself informed investors of all "known trends or uncertainties." 17 C.F.R. § 229.303(b)(2)(ii). As discussed above, Array disclosed that (i) it was "subject to risk from fluctuating market prices of certain commodity raw materials, including steel and aluminum," (ii) it "d[id] not enter into hedging arrangements to mitigate [this] risk," and (iii) "[s]ignificant price changes for these raw materials could reduce [its] operating margins if [it were] unable to recover such increases from [its] customers." J. App'x at 231. Given these fulsome disclosures and other publicly available data, the total mix of information provided investors with clear notice of the typical risks connected to fluctuations in global steel prices.[2]

---

[2] The Investors' remaining claims "invoke 'control person' liability . . . under Section 15 of the Securities Act [and] . . . Section 20(a) of the Exchange Act." *Rombach*, 355 F.3d at 177. Those sections extend liability to control persons involved in underlying "primary violation[s] of

## IV. Leave to Amend

Finally, the Investors challenge the district court's denial of their request for leave to amend. "Leave may be denied for good reason, including futility." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted). Having reviewed the Complaint and the Investors' proposed amendments, we agree with the district court that such amendments would not cure the Plaintiffs' pleading deficiencies. While the amendments might show that Array did not have the universal and absolute ability to pass on costs to its customers, we have already explained that no reasonable investor would have construed Defendants' statements as making such assurances in the first place. Ultimately, the Investors' repeated efforts to plead this case have failed simply because Array's risk disclosures did not misrepresent or omit any material information and because Array fulfilled its obligations under Item 303.

---

securities law." *Id.* at 177–78; *see* 15 U.S.C. § 77*o*; 15 U.S.C. § 78t. "Because we have already determined that the district court properly dismissed the primary securities claims . . . these secondary claims must also be dismissed." *Rombach*, 355 F.3d at 178.

\*     \*     \*

We have considered the Investors' remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court