**In re AFC ENTERPRISES, INC. SECURITIES LITIGATION.**

No. 1:03–CV–817–TWT.

United States District Court, N.D. Georgia.

Dec. 28, 2004.

See, also, 2003 WL 23281122.

1366

Robert R. Adler, Joseph E. White, III, Maya Saxena, Milberg, Weiss, Bershad & Schulman, Boca Raton, FL, Albert R. Atwood, Jr., Darren J. Robbins, Shaun Khojayan, William S. Lerach, Lerach, Coughlin, Stoia & Robbins, San Diego, CA, Andrei Rado, Steven G. Schulman, Milberg, Weiss, Bershad & Schulman, New York City, Edward H. Nicholson, Jr., Meryl W. Edelstein, Lauren S. Antonio, Martin D. Chitwood, Chitwood & Harley, Atlanta, GA, Marc A. Topaz, Schiffrin & Barroway, Bala Cynwyd, PA, Evan J. Smith, Brodsky & Smith, Bala Cynwyd, PA, Emily C. Komlossy, Goodkind, Labaton, Rudoff & Sucharow, New York City, Mark C. Gardy, Abbey Gardy, New York City, Nadeem, Faruqi, Faruqi & Faruqi, Nancy Kaboolian, Abbey Gardy, New York City, Jack Landskroner, Landskroner Grieco, Cleveland, OH, James Dabney Miller, King & Spalding, Atlanta, GA, James E. Miller, Shepherd, Finkelman, Miller & Shah, LLC, Chester, CT, Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, Scott R. Shepherd, Shepherd Finkelman Miller & Shah, Media, PA, Fred Taylor Isquith, Gregory M. Nespole, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Carol V. Gilden, Michael E. Moskovitz, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Chicago, IL, Karen Hanson Riebel, Lockridge, Grindal, Nauen, Minneapolis, MN, Joseph R. Seidman, Jr., Mel E. Lifshitz, Bernstein, Liebhard & Lifshitz, New York City, for plaintiffs.

Charles Neal Pope, Michael Lee McGlamry, Teresa Pike Tomlinson, Pope, McGlamry, Kilpatrick & Morrison & Norwood, Atlanta, GA, John M. Roth, David G.

Russell, J. Marbury Rainer, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, Allie Lin, Richard A. Rosen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, John R. Bielema, Jr., William Scott Sorrels, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for defendants.

## ORDER

THRASH, District Judge.

This is a securities fraud class action. It is before the Court on the Outside Directors, Freeman Spogli, and Penman Defendants' Motion to Dismiss [Doc. 99], the Underwriter Defendants' Motion to Dismiss [Doc. 100], the AFC Enterprises, Inc., Frank J. Belatti, Samuel N. Frankel, Dick R. Holbrook, and Gerald J. Wilkins Defendants' Motion to Dismiss [Doc. 102], and the Plaintiffs' Motion to Supplement the Record [Doc. 132].

### I. BACKGROUND

Defendant AFC Enterprises, Inc. ("AFC") is a publicly-traded company engaged in the ownership, operation, and franchising of fast food restaurants under the trade names Popeye's Chicken & Biscuits, Church's Chicken, Cinnabon, Seattle's Best Coffee, and Torrefazione Italia Coffee. During the proposed class period and all other times relevant to this litigation, Defendant Frank J. Belatti served as chairman of the board and chief executive officer of AFC. Defendant Gerald J. Wilkins served as chief financial officer of AFC since December 1995 and as executive vice-president since December 2000. Defendant Dick R. Holbrook served as president and chief operating officer of AFC since 1995. Defendant Samuel N. Frankel served as executive vice-president, secretary, and general counsel and as a director of AFC from 1992 to February 2001. Defendant Paul Farrar served as a director of AFC through February 2001. Defendants Mark J. Doran, Matt L. Figel,

Peter Starrett, and William M. Wardlaw each served as directors of AFC at all times relevant to this action.

The Lead Plaintiffs, the International Union of Operating Engineers Local 132 Pension Plan ("Local 132"), Thomas Savchick, and the Perkins Family Trust seek to represent a class of plaintiffs who purchased or otherwise acquired AFC stock between March 2, 2001, and March 24, 2003, ("the Class Period"). The Lead Plaintiffs allege that they and other similarly situated plaintiffs suffered damages stemming from the Defendants' alleged violations of federal securities laws and the resultant price inflation of AFC stock during the Class Period.

AFC Enterprises, Inc. was founded in 1992 in Atlanta as America's Favorite Chicken Company. In 1996, AFC received substantial investments from Defendants Freeman Spogli & Co. ("Freeman Spogli"), a merchant banking firm based in Los Angeles, and Penman Private Equity and Mezzanine Fund, L.P. ("Penman"), a private investment entity based in Chicago. In 1997, AFC reported $8.8 million in net income, the first profit posted by the company since its founding. AFC then reported steadily growing profits through the remainder of the Class Period. In 1998, AFC acquired Seattle Coffee Company and Cinnabon International, Inc. These acquisitions significantly increased its fast food restaurant portfolio. AFC continued to expand from 1998 to 2001. It went public on March 2, 2001. The initial public offering consisted of 9,375,000 shares of AFC common stock that began trading on NASDAQ under the symbol "AFCE." Later in 2001, AFC made a secondary public offering of 7,000,000 shares of common stock.

From its founding through April 2002, Arthur Andersen ("Andersen") served as AFC's outside accountant and auditor. In

April 2002, AFC hired KPMG LLP ("KPMG") to replace Andersen. Early in 2003, AFC, in consultation with KPMG, conducted a detailed review of its accounting and reporting policies. As a result of this review, on March 24, 2003, AFC announced its decision to restate its previously issued financial statements for all of fiscal year 2001 and for each of the first three quarters of 2002. AFC later announced that it would also restate financial statements for fiscal year 2000. Wilkins, the chief financial officer, resigned about a month after the first announcement.

AFC's restatement of its reported financials for 2000 through the third quarter of 2002 revealed that AFC's net income for this period was substantially lower than what had been reported in its financial reports.[1] The margins by which income for these reporting periods were overstated ranged from 21% to 92% with substantial variation. In response to AFC's announcement that it was restating its previous financials and its acknowledgment that it would miss the deadline for filing its 2002 Annual Report, AFC's stock price plummeted.

On March 25, 2003, the day after the announcement, AFC's stock price dropped $3.70 (21% of its total value) on unusually high trading volume. It closed at a 52–week low of $13.40 per share. On that same day, Plaintiff James Nugent filed a securities fraud action against AFC and Belatti and Wilkins. Nugent alleged generally that the Defendants knowingly or recklessly employed accounting methods that ignored Generally Accepted Accounting Principles ("GAAP") and misrepresented the condition of AFC's business to inflate the price of AFC stock. Other class action suits were also filed.

On August 18, 2003, this Court appointed Local 132, Thomas Savchick, and the Perkins Family Trust as Lead Plaintiffs. On January 26, 2004, the Lead Plaintiffs filed a Consolidated Amended Class Action Complaint. In this complaint, the Lead Plaintiffs named as Defendants in addition to the company: AFC officers Frank J. Belatti, Gerald J. Wilkins, Dick R. Holbrook, and Samuel N. Frankel (collectively "Officer Defendants"); AFC directors Mark J. Doran, Paul Farrar, Matt L. Figel, Kelvin Pennington, John M. Roth, Ronald P. Spogli, Peter Starrett, and William M. Wardlaw (collectively "Director Defendants"); investment firms Freeman Spogli and Penman; and underwriters Goldman, Sachs & Co., Credit Suisse First Boston Corporation, and Deutsche Banc Alex. Brown (collectively "Underwriter Defendants").

The Plaintiffs assert five claims against the Defendants for violations of the federal securities laws. In Count I, the Plaintiffs seek to recover against AFC, the Underwriter Defendants, the Officer Defendants, and the Director Defendants pursuant to section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, for alleged misstatements in the registration statement and prospectus issued in connection with the initial public offering. In Count II, the Plaintiffs seek to recover against the Officer Defendants, the Director Defendants, and Freeman Spogli as controlling persons of AFC under section 15 of the Securities Act, 15 U.S.C. § 77o. In Count III, the Plaintiffs assert a claim against Defendants AFC, Belatti, Wilkins, Holbrook, and Pennington for violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("the Exchange Act"), and Rule 10b–5 promulgated thereunder. In Count IV, the Plaintiffs assert a claim against

---

1. AFC's income was lower than reported earnings per share for every quarter except the first quarter of 2002 (the income for that period was somewhat understated).

Defendants Belatti, Wilkins, Holbrook, Pennington, Roth, Spogli, Freeman Spogli, and Penman as alleged controlling persons of AFC pursuant to section 20(a) of the Exchange Act. In Count V, the Plaintiffs allege that Defendants Belatti, Frankel, Freeman Spogli, and Penman engaged in insider trading in violation of section 20A of the Exchange Act. The Defendants move to dismiss all of these claims on various grounds.

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A., 711 F.2d 989, 994–95 (11th Cir.1983). The court may consider evidence which is undisputedly authentic and on which the plaintiff specifically relies, and may take judicial notice of any relevant documents legally required by and publicly filed with the Securities and Exchange Commission ("SEC"). Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir.1999); Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir.1999). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir.1985), cert. denied, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id.

## III. DISCUSSION

### A. Exchange Act Claims

#### 1. Accounting Fraud

This is primarily an accounting fraud case. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5, promulgated by the SEC pursuant to this provision, states:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. It is now well settled that there is a private right of action for a violation of Rule 10b–5. To establish a prima facie case for a Rule 10b–5 fraud claim, a plaintiff must show "(1) a false statement or omission of material fact (2) made with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's injury." Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir.1997). The first two elements of a prima facie case are at issue here.

### a. *False Statements*

The Plaintiffs contend that the financial statements attached to the IPO Prospectus and the financial statements for every quarter after the IPO, through the third quarter of 2002, were false due to the material misstatement of revenues, expenses and net income. In the December 2003 restatement of its financial statements for 2000, 2001 and 2002, AFC and KPMG identified twenty-one accounting errors that affected quarterly and year-end earnings. At least four of the errors significantly affected earnings for the three years in question. Those are: (1) failure to defer gains associated with unit conversions; (2) failure to write down impaired assets at poorly-performing stores; (3) failure to make appropriate inventory adjustments at Seattle Coffee; and (4) improper capitalization of "slotting fees" paid to wholesalers by Seattle Coffee. It is undisputed that these errors are violations of GAAP. It is, however, important to emphasize that the actionable false statements are the incorrect financial statements and not the accounting errors themselves. But, the nature and extent of the accounting errors are the reasons why the financial statements were misleading, and are very important to the later discussion of scienter.

The Defendants contend that the Plaintiffs have failed to plead fraud with sufficient particularity to satisfy the requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) (hereinafter "the Reform Act"). Pursuant to the Reform Act, a plaintiff must "specify each statement alleged to have been misleading" and must outline "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). In doing so, the plaintiffs must plead with particularity sufficient facts to support their allegations. *Novak v. Kasaks,* 216 F.3d 300, 313 (2d Cir.2000); *In re Theragenics Corp.*

*Securities Litigation,* 105 F.Supp.2d 1342, 1348–49 (N.D.Ga.2000). If a plaintiff fails to meet this pleading requirement, the complaint must be dismissed. 15 U.S.C. § 78u–4(b)(3)(A); *see also Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 866 (5th Cir. 2003).

The policy underlying the pleading standard of the Reform Act is to provide notice of the specific allegedly fraudulent conduct so that the defendant can directly rebut the charges. *In re Theragenics,* 105 F.Supp.2d at 1348–49. The Reform Act pleading requirements serve the additional purposes of protecting defendants from unfounded harm to their reputations, reducing the number of strike suits and "in terrorem" settlements, and preventing plaintiffs from suing and using discovery as a "fishing expedition" in the blind hope of finding something to support their claims. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997); *In re Theragenics,* 105 F.Supp.2d at 1349. This heightened pleading requirement also permits the court at an early stage of the litigation to determine whether the false statements or omissions are material and whether they were made with the requisite fraudulent intent.

The Defendants contend that the Plaintiffs fail to plead the violations of securities laws with sufficient particularity because they fail to attribute particular fraudulent statements to each individual Defendant. In cases such as this of corporate fraud where misrepresentations are conveyed in prospectuses, press releases, or other "group-published information," plaintiffs may rely upon the "group pleading doctrine." The group pleading doctrine permits a plaintiff to presume, for the purpose of pleadings, that these statements are the collective actions of the officers or directors of a corporation. *Wool v.*

*Tandem Computers Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987); *see also Phillips v. Scientific–Atlanta, Inc.,* 374 F.3d 1015, 1018–19 (11th Cir.2004) (*"Scientific–Atlanta II"*). It is important to note that the group pleading doctrine allows attribution of statements to individual defendants; it has no application to the determination of scienter as to individual defendants.

 There are differences of opinion in the circuit courts as to the viability of the group pleading doctrine in the wake of the Reform Act. *Scientific–Atlanta II,* 374 F.3d at 1018–19; *compare Southland Securities Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 363–65 (5th Cir.2004) (holding that the Reform Act undercuts the principles supporting and thus eradicates the group pleading doctrine), *with Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1254 (10th Cir.1997) (holding that the group pleading doctrine survives the Reform Act). The Eleventh Circuit has yet to take a firm position on the continued vitality of the doctrine. *Scientific–Atlanta II,* 374 F.3d at 1019. This Court finds that the policy rationale supporting use of the doctrine, articulated in numerous decisions in this district, remains persuasive provided that application of the doctrine is kept within proper bounds. *See In re Cryolife, Inc. Securities Litigation,* No. 02–CV–1868–BBM, slip. op. at 35 n. 7 (N.D.Ga. May 27, 2003); *In re JDN Realty Corp. Securities Litigation,* 182 F.Supp.2d 1230, 1250–51 (N.D.Ga.2002); *In re World Access, Inc. Securities Litigation,* 119 F.Supp.2d 1348, 1357 (N.D.Ga.2000); *but see In re Premiere Technologies Inc. Securities Litigation,* 2000 WL 33231639, at *10 (N.D.Ga. 2000) (holding that the group pleading doctrine is inconsistent with the Reform Act). The group pleading doctrine creates a rebuttable presumption that applies to a limited number of persons within a given company who should expect to be held accountable for the company's public statements. In a case such as this, its application is appropriate and fair. *In re JDN Realty,* 182 F.Supp.2d at 1251; *In re Theragenics,* 105 F.Supp.2d at 1358. Thus, this Court finds that, at this stage of litigation, the Plaintiffs, using the group pleading doctrine, have pleaded claims against the individual Defendants with sufficient specificity to satisfy this requirement of the Reform Act.

#### b. Scienter

 A securities claim under the Exchange Act requires proof of scienter, that is, a state of mind involving intent to deceive or severe recklessness. Under the Reform Act, a securities fraud complaint must allege fraud with particularity and, must also "allege facts giving rise to a strong inference of scienter." *Scientific–Atlanta II,* 374 F.3d at 1016. At the very least, "a securities fraud plaintiff must plead scienter with facts giving rise to a strong inference that the defendant acted in a severely reckless manner." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1287 (11th Cir.1999). The Eleventh Circuit recently held that "scienter must be found with respect to each defendant and with respect to each alleged violation." *Scientific–Atlanta II,* 374 F.3d at 1017–18. Thus, "a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations." *Id.* at 1018. However, the plaintiff may aggregate relevant facts and reasonable inferences to demonstrate that each defendant acted with the required state of mind. *Id.* at 1017, 1018 n. 6.

#### (i) Defendants Belatti, Holbrook and Pennington

 As to Belatti, Holbrook and Pennington, the Plaintiffs rely upon the Defendants' alleged GAAP violations and motive

and opportunity to defraud. It is undisputed that AFC restated its financial statements because the original statements were not prepared in accordance with GAAP. GAAP violations, standing alone, are insufficient to create an inference of fraud. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1020–21 (5th Cir.1996) (failure to follow GAAP, without more, does not establish scienter); *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 553 (6th Cir.1999) ("The failure to follow GAAP is, by itself, insufficient to state a securities fraud claim."); *In re Worlds of Wonder Securities Litigation*, 35 F.3d 1407, 1426 (9th Cir.1994) ("[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter."); *Barr v. Matria Healthcare, Inc.*, 324 F.Supp.2d 1369, 1384 (N.D.Ga.2004). However, violations of GAAP, when coupled with other evidence of fraud, can create a strong inference of scienter. *See, e.g., In re Scientific–Atlanta, Inc. Securities Litigation*, 239 F.Supp.2d 1351, 1363 (N.D.Ga. 2002) ("*Scientific–Atlanta I*"); *In re World Access, Inc. Securities Litigation*, 119 F.Supp.2d 1348, 1356 (N.D.Ga.2000). For example, alleged GAAP violations combined with a profound overstatement of financial results of a company may establish severe recklessness. *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F.Supp.2d 1324, 1339–40 (N.D.Ga.1998); *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1472 (N.D.Ga.1997).[2] The issuance of a restatement may also contribute to

the establishment of scienter. Where the "number, size, timing, nature, frequency, and context of the [GAAP violations] or restatement are taken into account, the balance of the inferences to be drawn from such allegations may shift significantly in favor of scienter." *In re MicroStrategy, Inc. Securities Litigation*, 115 F.Supp.2d 620, 635 (E.D.Va.2000); *see, e.g., Rosen v. Textron, Inc.*, 321 F.Supp.2d 308, 322–23 (D.R.I.2004); *In re Hayes Lemmerz Intern., Inc. Equity Securities Litigation*, 271 F.Supp.2d 1007, 1018 (E.D.Mich.2003).

"[K]nowledge is the foundation of scienter." *In re Theragenics*, 105 F.Supp.2d at 1360. The Plaintiffs contend that certain characteristics of the GAAP violations and of the restatement conducted by AFC suggest that the Defendants knew or were severely reckless in not knowing about the GAAP violations. The Plaintiffs argue that the scope and nature of the restatement suggest that the GAAP violations were large enough and egregious enough that this Court may presume the Defendants' constructive knowledge of these violations. The facts alleged, however, counsel against such a presumption. The size of the restatements, although substantial when gauged as against operating income and net income, is less overwhelming when placed in the context of AFC's entire business operations.[3] The accounting errors identified, although GAAP violations to be sure, were errors in accrual of income and expenses, not attempts to fabricate revenue or to conceal expenses. Neither the size nor the type of errors discovered in

---

**2.** Of course, violations of GAAP deemed intentional and material are sufficient to establish scienter. *Malone v. Microdyne Corp.*, 26 F.3d 471, 479–80 (4th Cir.1994).

**3.** In 2000 and 2001, AFC's actual operating income was overstated by 21% and 50%, and its actual net income was overstated by 50% and 136%, respectively. These overstatements, however, reflect only 0.3% and 0.8%

differences in reported revenues and 1.9% and 4.4% differences in expenses. The Defendants do not contend, as the Plaintiffs appear to assume, that these differences are so minor as to be wholly immaterial. Rather, the Defendants argue that the differences are not so large as to be glaringly obvious and, thus, constructively known by the Defendants to be erroneous when reported. The point is well taken.

the restatements entitle the Plaintiffs or encourage the Court to infer fraud based on the GAAP violations alone. As to these Defendants, allegations of specific additional facts suggesting knowledge of the fraud are required to permit a strong inference of scienter.

The Plaintiffs also assert that these Defendants had the motive and opportunity to commit fraud. Like GAAP violations, facts showing that a defendant had such motive and opportunity are alone insufficient to raise a strong inference of scienter. *Bryant,* 187 F.3d at 1286; *In re Theragenics,* 105 F.Supp.2d at 1360. But, evidence of motive and opportunity may contribute to an inference of intent to defraud. *Bryant,* 187 F.3d at 1285–86; *In re Theragenics,* 105 F.Supp.2d at 1360. The Plaintiffs contend that the Defendants' stock sales, incentive compensation, and desire to meet analysts' estimates are the additional facts necessary to establish scienter.

The Plaintiffs claim that the Defendants' sales of AFC stock during the Class Period raise an inference of scienter. Insider sales may contribute to an inference of scienter where a plaintiff can show that the trading activity was unusual. *See Rothman v. Gregor,* 220 F.3d 81, 94 (2d Cir.2000); *SEC v. Adler,* 137 F.3d 1325, 1340 (11th Cir.1998); *In re Miller Industries, Inc. Securities Litigation,* 12 F.Supp.2d 1323, 1332 (N.D.Ga.1998). A stock sale may be deemed unusual when it is made at a time or in an amount that suggests that the seller is maximizing personal benefit from inside information. *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995); *see also Adler,* 137 F.3d at 1340; *In re Miller Industries, Inc.,* 12

F.Supp.2d at 1332. During the Class Period, these Defendants and other AFC directors and officers sold over 9.2 million shares of AFC stock, generating proceeds over $210 million.[4]

Although the amount of stock sold during the Class Period is substantial, the timing of these sales was quite ordinary. It is not uncommon or otherwise suspicious to sell stock in association with a public offering; indeed, the sale of stock is often the point of the offering. *Southland,* 365 F.3d at 369. Most of the Defendants' sales of AFC stock occurred in proximity to or in conjunction with AFC's secondary public offering. Significant gaps in time between a sale of stock and the announcement causing the stock price to decline may diminish the likelihood of scienter. *See In re Party City Securities Litigation,* 147 F.Supp.2d 282, 313 (D.N.J.2001) (refusing to infer scienter from sales occurring twelve, four, and three months before a negative announcement). Most of the Defendants' sales also occurred well in advance of the March 24, 2003, announcement that AFC would restate its financial statements. The latest sale cited by the Plaintiffs is Pennington's liquidation of Penman's AFC stock on November 26, 2002. Although the Defendants' sales fall within the Class Period, none were so close to the restatement announcement as to create or support a strong inference of scienter. When a stock is sold at a price well below its peak value, it is harder to suggest that the sale was intended to maximize the seller's personal benefit. *Southland,* 365 F.3d at 369 (stock price climbing after sale suggest that sales were "not unusually prescient"); *Ronconi v. Larkin,* 253 F.3d 423, 435 (9th Cir.2001) (selling

---

4. The vast majority of the stock sold belonged to Defendant firms Freeman Spogli (6,624,-000 shares, representing 46.84% of its total holdings) and Penman (1,574,637 shares, representing 100% of its total holdings). Belatti sold 438,000 shares (19.78% of his total holdings), Wilkins sold 109,000 shares (46.67% of his total holdings), and Holbrook sold 311,-740 shares (32.11% of his total holdings).

before a significant rise is less likely to support an inference of scienter). The price at which the Defendants sold the majority of their AFC stock, the secondary offering price, was well below the peak price of the stock. The secondary offering price was $23 per share, but the trading price of AFC stock climbed to over $34 per share in mid–2002.

■ The Plaintiffs also argue that the Defendants' receipt of incentives, in the form of both monetary bonuses and stock options, tied to AFC's profitability supports an inference of scienter. Extraordinary incentive packages may motivate a corporate officer to engage in fraudulent activity. *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir.2002) ("When financial incentives to exaggerate earnings go far beyond the usual arrangements of compensation based on the company's earnings, they may be considered among other facts to show scienter."). Clearly, however, standard incentive compensation cannot be the sole basis on which to plead scienter; otherwise executives of any major corporation could and would be subject to allegations of fraud. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068–69 (5th Cir.1994). Unfortunately, extravagant compensation packages for senior executives have become the norm in corporate America. As the Plaintiffs allege no facts showing that the Defendants' compensation deviates from the incentive packages normally afforded corporate officers, their allegations of incentive compensation do not support an inference of scienter.

■ The Plaintiffs also contend that the Defendants were motivated to commit accounting fraud in order to meet analysts' earnings projections. AFC's earnings per share, as originally reported, nearly exactly met analysts' expectations for seven consecutive quarters. The restatement revealed that AFC's earnings actually fell significantly below these estimates for six of the seven quarters. The Plaintiffs argue that the "uncanny precision" with which AFC's financial reports met analysts' expectations suggests that the Defendants manipulated the items subject to the restatement. As to Belatti, Holbrook and Pennington, there are no specific facts alleged that lead to a strong inference that they knew that the company's books were being manipulated to meet market expectations.

■ The Plaintiffs also argue that the individual Defendants, each of whom held top-level management positions at AFC, presumably knew about the accounting errors because they related to operations central to AFC's business. Most of the case law supporting the Plaintiffs' argument concerns representations regarding core production or sales components of a defendant's business. *See, e.g., Cosmas v. Hassett*, 886 F.2d 8 (2d Cir.1989) (presuming knowledge regarding viability of sales to China); *In re Clarus Corp. Securities Litigation*, 201 F.Supp.2d 1244, 1251 (N.D.Ga.2002) (imputing knowledge regarding a single sale that constituted over one-third of quarterly revenue); *In re World Access*, 119 F.Supp.2d at 1355–56 (assuming knowledge of severe problems with flagship product). The Plaintiffs do not allege misrepresentations regarding production or sales, but rather allege GAAP violations. It is more tenuous to impute knowledge of cumulative accounting errors generally to operational officers and directors of a corporation. Any inference that the Director Defendants knew of the GAAP violations is also mitigated by AFC's reliance on an outside accounting firm to audit its financials. The Defendants' positions within AFC, thus, do not suggest that they had knowledge of or intent to commit any of the alleged GAAP violations.

### (ii) *Defendants Wilkins and AFC*

Allegations of GAAP violations, when coupled with other probative evidence of fraud, can create a strong inference of scienter. As to Wilkins, the Plaintiffs have alleged specific facts that justify an inference of severe recklessness if not intent to defraud. They allege that this Defendant was the chief financial officer of AFC from 1995 until April 2003. They allege that he was trained as a certified public accountant and that he had significant accounting, auditing and SEC reporting experience. (Consolidated Amended Class Action Complaint ¶ 30). The number and magnitude of the GAAP violations for the entire time that AFC was a public company suggest an extreme departure from ordinary care by a chief financial officer with this experience and background. In particular, the Plaintiffs allege facts that support a strong inference that Wilkins knew or should have known that the company was improperly recording immediate gains on the sales of company-owned stores to franchisees. The Plaintiffs allege that "Wilkins engineered the conversion plan to 'make the company's earnings look better' and provide an 'immediate impact on positive earnings and EBITDA.'" (Consolidated Amended Class Action Complaint ¶ 159). The Plaintiffs allege that Wilkins was intimately involved in the conversion process and that for each conversion he reviewed documents indicating the net gain on the sale and its effect on earnings. (*Id.* at ¶ 160). It looks like the company's earnings were being manipulated to meet market expectations. If that was happening, the most likely senior executive to know about it would be the chief financial officer. These facts along with large stock sales, incentive compensation, and precise meeting of analysts' estimates are sufficient in totality to satisfy the pleading standard of the Reform Act as to Wilkins. If a claim is adequately pleaded as to Wilkins, it is adequately pleaded as to AFC. *Southland Securities*, 365 F.3d at 366.

### 2. *Insider Trading*

The Plaintiffs assert a claim against Belatti, Holbrook, Frankel, Freeman Spogli, and Penman, alleging that they engaged in insider trading in violation of section 20A of the Exchange Act, 15 U.S.C. § 78t–1. Specifically, the Plaintiffs allege that these Defendants, having non-public knowledge about AFC's financial status, traded blocks of AFC stock contemporaneously with the Plaintiffs.

Section 20A of the Exchange Act provides that a corporate insider who sells stock "while in possession of material, non-public information" is liable to any person who traded contemporaneously with the insider. *In re Advanta Corp. Securities Litigation*, 180 F.3d 525, 541 (3d Cir.1999) (quoting 15 U.S.C. § 78t–1(a)). To state a claim under section 20A, a plaintiff must allege a predicate violation of the Exchange Act. 15 U.S.C. § 78t–1(a) (requiring a violation of "this chapter or the rules or regulations thereunder"); *see also In re Advanta*, 180 F.3d at 541; *Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir.1994) ("[T]o state a claim under § 20A, a plaintiff must plead a predicate violation of the '34 Act or its rules and regulations."); *In re VeriFone Securities Litigation*, 11 F.3d 865, 872 (9th Cir.1993) ("Shareholders concede that if they have failed to allege an actionable independent underlying violation of the '34 Act, they similarly cannot maintain a claim under § 20A."). Here, the Plaintiffs base their section 20A claim on the Defendants' alleged violation of section 10(b) of the Exchange Act. As discussed in the previous section, the Plaintiffs have failed to properly allege scienter and, thus, have failed to assert a predicate claim against these Defendants under the Exchange Act.

The Plaintiffs' section 20A claim fails for lack of an underlying violation as to these Defendants.

### 3. *Controlling Person Liability*

■ The Plaintiffs assert a claim against Belatti, Wilkins, Holbrook, Pennington, Roth, Spogli, Freeman Spogli, and Penman under section 20(a) of the Exchange Act, 15 U.S.C. § 78t. The Plaintiffs' section 20(a) claim against these "controlling persons" is derivative of their section 10(b) claims against AFC, the allegedly "controlled person." In the Eleventh Circuit, a defendant is liable as a controlling person under section 20(a) if he or she had the power to control the general affairs of the entity primarily liable, and had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability. *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir.1996). The Plaintiffs have adequately pleaded the elements of controlling person liability. Some of the Defendants make appealing arguments as to why they are not controlling persons. However, these arguments rely upon facts outside of the pleadings and matters of judicial notice. The issue may be revisited by motions for summary judgment at the appropriate time.

### B. *Securities Act Claims*

The Plaintiffs assert a claim against AFC, the Underwriter Defendants,[5] the Officer Defendants,[6] and the Director Defendants[7] pursuant to section 11 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k. The Securities

Act was enacted to guarantee investors full disclosure of material information concerning public offerings. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Section 11 ensures compliance with the disclosure provisions of the Securities Act. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). It imposes a "strict standard of liability on the parties who play a direct role in a registered offering." *Id.* at 381–82, 103 S.Ct. 683. To state a claim under section 11, a plaintiff need only show that a security was purchased pursuant to a registered offering and that the registration statement contained a material misstatement or omission of material fact. *Id.* at 382, 103 S.Ct. 683. Scienter is not an element of a section 11 claim. *Id.*

### 1. *Pleading Requirements*

■ The Defendants contend that the Plaintiffs' section 11 claim is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "averments of fraud" must be pleaded with particularity. Fed.R.Civ.P. 9(b). Although a claim pursuant to section 11 of the Securities Act does not require allegations of fraud, a number of courts have held that section 11 claims which "sound in fraud" or are based on facts which suggest fraud must be pleaded with particularity. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir.2004) ("[T]he heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud."); *In re*

---

**5.** The Underwriter Defendants, as mentioned *supra*, are Goldman, Sachs & Co., Credit Suisse First Boston Corporation, and Deutsche Banc Alex. Brown.

**6.** The Officer Defendants, as mentioned *supra*, are Frank J. Belatti, Gerald J. Wilkins, Dick R. Holbrook, and Samuel N. Frankel.

**7.** The Director Defendants, as mentioned *supra*, are Mark J. Doran, Paul Farrar, Matt L. Figel, Kelvin Pennington, John M. Roth, Ronald P. Spogli, Peter Starrett, and William M. Wardlaw.

*Stac Electronics Securities Litigation,* 89 F.3d 1399, 1404–05 (9th Cir.1996) ("[T]he particularity requirements of Rule 9(b) apply to claims brought under Section 11 when, as here, they are grounded in fraud."); *Melder v. Morris,* 27 F.3d 1097, 1100 n. 6 (5th Cir.1994) (Rule 9(b) applies when "Securities Act claims are grounded in fraud rather than negligence."); *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 288 (3d Cir.1992) ("[W]hen § 11 and § 12[(a)](2) claims are grounded in fraud rather than negligence, Rule 9(b) applies."); *see also Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990) (pleading with particularity required for § 12 claims that sound in fraud); *but see In re Nations-Mart Corp. Securities Litigation,* 130 F.3d 309, 314 (8th Cir.1997) ("[T]he particularity requirement of Rule 9(b) does not apply to claims under § 11 of the Securities Act, because proof of fraud or mistake is not a prerequisite to establishing liability under § 11."). The two courts in this district that have examined this issue have followed the majority rule and held that section 11 claims sounding in fraud are subject to the pleading requirements of Rule 9(b). *See TAAM Associates Inc. v. Housecall Med. Resources, Inc.,* No. 1:96–CV–2214–A–JEC, 1998 WL 1745361, at *11 (N.D.Ga. Mar.30, 1998) ("Upon a review of the purposes behind Rule 9(b) and the language of that Rule, this Court agrees with the majority position that Rule 9(b)'s particularity requirements apply to a claim brought under the 1933 Securities Act if that claim 'sounds in fraud.' "); *Gross v. Medaphis Corp.,* 977 F.Supp. 1463, 1470 (N.D.Ga.1997) ("[T]he allegations of fraud in support of [the plaintiffs'] claims under

the Securities Act also must be pled with sufficient particularity to satisfy Rule 9(b)."); *see also In re Premiere Technologies Inc. Securities Litigation,* No. 1:98–CV–1804–JOF, at *22 n. 6 (N.D.Ga. Dec. 8, 2000) (recognizing majority position but finding application of Rule 9(b) unwarranted, as the plaintiffs' Section 11 and Section 12 claims did not sound in fraud). The heightened requirements imposed upon allegations of fraud are intended to protect defendants from unfounded harm to their reputations and to prevent plaintiffs from suing and then using discovery in the blind hope of finding something to support their claims.

It is unnecessary in this case for the Court to rule on whether section 11 claims are subject to the pleading requirements of Rule 9(b) for two reasons: (1) the Plaintiffs' section 11 claim does not "sound in fraud"; and (2) the Plaintiffs' section 11 claim is pleaded with sufficient specificity to satisfy the requirements of Rule 9(b). The Defendants contend that the Plaintiffs' section 11 claim "sounds in fraud" and is thereby subject to the heightened pleading requirements of Rule 9(b). The Plaintiffs' Consolidated Amended Class Action Complaint, taken as a whole, certainly sounds in fraud. The claims that the Plaintiffs assert under the Exchange Act are based on allegations of accounting fraud. The Plaintiffs' section 11 Securities Act claim, however, does not rely on these allegations of fraud. In fact, the Plaintiffs take great care to distinguish and to physically separate their Securities Act claim that the AFC prospectuses contained untrue statements from their Exchange Act claims of accounting fraud.[8]

---

8. The Defendants contend that the Plaintiffs fail to adequately separate the allegations supporting their section 11 claim from those supporting their fraud claims because the Plaintiffs expressly incorporate fraud allegations by reference into their section 11 claim. The Defendants cite fraud-based language in an introductory section summarizing the Plaintiffs' claims, Consolidated Amended Class Action Complaint ¶ 4 (Defendants' "scheme") and ¶ 5 (Defendants' "accounting chicanery"), and in sections referenced in the discussion of the AFC restatement, Consolidated Amended Class Action Complaint ¶ 147

Indeed, the Plaintiffs expressly state that with respect to the section 11 claim, they "specifically exclude any allegations of knowledge or scienter." (Consolidated Amended Class Action Complaint ¶ 66). The courts are divided on effect of such a disclaimer. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir.2001) (finding that a complaint left "no misunderstanding" that allegations of fraud were separate from Securities Act claims where the complaint "expressly 'do[es] not assert that defendants are liable for fraudulent or intentional conduct' "); *In re NationsMart*, 130 F.3d at 315 (denying applicability of Rule 9(b) to a complaint which makes clear "that [the plaintiffs] did not allege in the context of their § 11 claim that the defendants were liable for fraudulent or intentional conduct"); *In re Premiere Technologies Inc. Securities Litigation*, No. 1:98–CV–1804–JOF, at *22 n. 6 (N.D.Ga. Dec. 8, 2000) (finding Rule 9(b) inapplicable to a Securities Act claim where "Plaintiffs expressly state that their claims under §§ 11 and 12(a)(2) do not incorporate any allegations of intentional or reckless misconduct"); *but see Rombach*, 355 F.3d at 172 (finding that, irrespective of pleading labels or empty disclaimers, claims against individual defendants sound in fraud, and claims against underwriters sound in negligence); *In re Stac Electronics*, 89 F.3d at 1405 n. 2 (deeming the specific disclaimer of fraud allegations unconvincing where "the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the Prospectus"). The Plaintiffs' section 11 claim can be distinguished from those discussed in *Rombach* and *In re Stac Electronics*, as the Plaintiffs have meticulously differentiated their claims and have outlined bases for their section 11 claim which do not rely on allegations involving fraud.[9] Thus, the Plaintiffs' claim under section 11 does not "sound in fraud" and, thus, need not meet the pleading requirements of Rule 9(b).

Even if the Plaintiffs' section 11 claim were to "sound in fraud," the claim satisfies Rule 9(b), as it pleads the allegations of fraud with the requisite particularity. The Defendants contend that the Plaintiffs fail to provide details regarding the "who, what, when, where, and how" of the Defendants' allegedly fraudulent behavior.

---

("fraudulent accounting practices") and ¶ 148 ("intentional misuse of facts"). This language is not incorporated in the Plaintiffs' section 11 claim in such a fashion as to deem the claim as "sounding in fraud." Indeed, the Plaintiffs expressly reference the AFC restatement only to support the contention that the financial statements associated with and discussed in the prospectuses were false.

9. The primary case cited by the Defendants to support the argument that the Plaintiffs' claim sounds in fraud is *Rombach v. Chang*, 355 F.3d 164 (2d Cir.2004). In reaching the conclusion that some of the plaintiffs' section 11 claims sounded in fraud, the Second Circuit held that the plaintiffs' effort to characterize claims solely by the labels in the pleadings was insufficient. In support of this conclusion, the Second Circuit cited two cases, *In re Stac Electronics Securities Litiga-*

*tion*, 89 F.3d 1399, 1405 n. 2 (9th Cir.1996), and *In re Ultrafem Inc. Securities Litigation*, 91 F.Supp.2d 678, 690–91 (S.D.N.Y.2000), each of which suggests that where plaintiffs make little effort to differentiate Securities Act claims from fraud claims, a disclaimer alone will not keep a Securities Act claim from sounding in fraud. The Plaintiffs' Consolidated Amended Class Action Complaint does not share this flaw. The cases cited in *Rombach* also do not appear inconsistent with the finding of the Eighth Circuit in *In re NationsMart* that "[t]he only consequence of holding that Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be stripped from the claim." *In re NationsMart*, 130 F.3d at 315. "The allegations of innocent or negligent misrepresentation, which are at the heart of a § 11 claim, would survive." *Id.*

*Melder,* 27 F.3d at 1100 n. 5; *Sears,* 912 F.2d at 893. To argue that the Plaintiffs' section 11 claim "sounds in fraud," the Defendants necessarily contend that the misrepresentations that are the subject of the claim, the prospectuses for AFC's public offerings, constitute the allegedly fraudulent behavior in question. The details regarding the "what" (statements outlined in Consolidated Amended Class Action Complaint ¶¶ 54, 63), "when" (dates prospectuses were issued), and "where" (prospectuses) of the alleged misrepresentations are relatively self-evident. In paragraphs following the recitation of each alleged misrepresentation, the Plaintiffs outline "how" each statement is false or misleading. (Consolidated Amended Class Action Complaint ¶¶ 55–56, 64). The Defendants, in particular the Underwriter Defendants, contend that the Plaintiffs fail to specifically identify "who" made and is liable for the misrepresentations in AFC's prospectuses. Specifically, the Defendants cite the Plaintiffs' failure to identify which individual Defendants are responsible for making the untrue statements in the prospectuses. As section 11 of the Securities Act recognizes, it is extremely difficult, if not impossible, for an outsider to identify the individuals responsible for misrepresentations made in a prospectus. A prospectus is a group-published document— the collective effort of the issuing company, its directors and officers, its accountants and lawyers, and the underwriters. In recognition that all of these parties contribute to, and are thus responsible for, the statements in a prospectus, section 11 of the Securities Act creates statutory liability for all of these classes of defendants, regardless of specific authorship. 15 U.S.C. § 77k. Thus, as it is impossible to determine "who" specifically made the alleged misrepresentations within the group-published prospectuses, the Plaintiffs pleaded the section 11 claim with specific particularity by identifying the Defendants

as falling within the classes designated as liable for such statements under section 11.

### 2. *Standing*

 The Director Defendants assert that the Plaintiffs do not have standing to assert their section 11 claim, as, they contend, the Plaintiffs assert no section 11 damages. Under section 11, damages are limited to the amount paid for a security less: (1) the value of the security at the time that suit was brought, (2) the price of the security if sold in the market before suit, or (3) the price at which the security is disposed of after suit, if greater than the value when suit was brought. 15 U.S.C. § 77k(e). Lead Plaintiff Savchick purchased his shares of AFC stock at $17.00 per share pursuant to AFC's initial public offering. He continues to hold these shares. The Plaintiffs filed their Consolidated Amended Class Action Complaint on January 26, 2004. On that date, the price of AFC stock was $23.00. The Defendants contend that, pursuant to the first prong of 15 U.S.C. § 77k(e), Savchick has suffered no damages at law and, thus, that the Plaintiffs do not have standing to assert a section 11 claim. This argument is misplaced, as it relies on interpretation of the phrase "at the time suit was brought" to mean "at the time that the amended complaint is filed." In *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir.1996), the Eighth Circuit expressly held that Rule 15(c)(2) of the Federal Rules of Civil Procedure provided that an amended complaint containing the initial assertion of a section 11 claim "relates back" to the original complaint for the purpose of determining the date by which section 11 damages are measured. *Alpern,* 84 F.3d at 1541– 44; *see also Grossman v. Waste Management, Inc.,* 589 F.Supp. 395 (N.D.Ill.1984); *Beecher v. Able,* 435 F.Supp. 397 (S.D.N.Y. 1975).

As the section 11 claim asserted in this case arose out of the general transactions and occurrences set forth in the original complaint, the appropriate measure of damages is the difference between the purchase price and the price of the stock on the day that the original complaint was filed. The original complaint in this case was filed on March 25, 2003. On that day, the price of AFC stock was $13.40, $3.60 lower than the $17.00 price at which Savchick purchased his AFC stock. Thus, the first prong of 15 U.S.C. § 77k(e) suggests that the Plaintiffs properly pleaded damages.

In the alternative, the Director Defendants contend that the third prong of 15 U.S.C. § 77k(e) compels a finding that the Plaintiffs fail to plead damages. The third prong of the provision states that if the stock is sold after suit but before judgment, then the damages shall be measured as the price of purchase less the price of sale. Savchick has not sold his stock. Thus, this provision does not yet apply to his claim. At best, disposition of this issue is premature at this stage in the litigation. Accordingly, the Plaintiffs have pleaded damages sufficiently to establish standing to assert their section 11 claim.

### 3. *Due Diligence*

The Director Defendants and Underwriter Defendants contend that their reliance on the expert opinion of AFC's external auditor constitutes due diligence under section 11(b)(3)(C) and requires dismissal of the Plaintiffs' section 11 claim against them. 15 U.S.C. § 77k(b)(3)(C). As determinations of the reasonableness of a defendant's investigation or a defendant's reliance on expert opinion are fact-intensive inquiries, they are generally not properly resolved on motions to dismiss. *See, e.g., In re Global Crossing, Ltd. Securities Litigation,* 313 F.Supp.2d 189, 211

(S.D.N.Y.2003); *In re Enron Corp. Securities, Derivative, & ERISA Litigation,* 258 F.Supp.2d 576 (S.D.Tex.2003); *Griffin v. PaineWebber Inc.,* 84 F.Supp.2d 508, 513 (S.D.N.Y.2000). Thus, dismissal of the Plaintiffs' section 11 claim based on the Defendants' reliance on expert opinion is inappropriate at this time. The issue may be revisited at an appropriate time by a motion for summary judgment.

### 4. *Defendants Farrar and Frankel*

■ Paul Farrar and Samuel N. Frankel contend that they are not proper Defendants as to the Plaintiffs' section 11 claim. Subsection (a) of section 11 enumerates those persons who are liable for false or misleading statements on a registration statement. 15 U.S.C. § 77k(a). Every person who signs the registration statement is liable under section 11. 15 U.S.C. § 77k(a)(1). It is undisputed that neither Farrar nor Frankel signed the registration statement dated March 2, 2001, and filed in connection with AFC's initial public offering. Thus, neither Farrar nor Frankel is liable as a signer of the registration statement. Persons who are directors of the issuer at the time of the filing of the registration statement are also liable. 15 U.S.C. § 77k(a)(2). The registration statement at issue was filed on March 2, 2001. Both Farrar and Frankel resigned from their positions as directors of AFC in February 2001, before the filing date of the initial public offering registration statement. Thus, neither Farrar nor Frankel is liable as a director of AFC. No other basis for liability is alleged. Farrar and Frankel are not proper Defendants to the Plaintiff's section 11 claim; thus, the claim is dismissed as against these Defendants.

### 5. *Controlling Person Liability*

■ The Plaintiffs assert a claim against the Director Defendants,[10] the Of-

---

10. The Director Defendants, as mentioned *su-* *pra,* are Mark J. Doran, Paul Farrar, Matt L.

ficer Defendants,[11] and Freeman Spogli pursuant to section 15 of the Securities Act, 15 U.S.C. § 77o. The Plaintiffs contend that the Officer Defendants, the Director Defendants, and Freeman Spogli exercised sufficient control over AFC to render them jointly liable to the Plaintiffs for violations of section 11 of the Securities Act. The SEC's implementing regulations define "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. To plead control person liability under section 15, a plaintiff must allege that the defendant had the power to control both the general operations of the offending corporation and the specific corporate policy that resulted in the offense. *See Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir.1996).

### a. *Director Defendants*

■ The Plaintiffs claim that AFC directors Doran, Farrar, Figel, Pennington, Roth, Spogli, Starrett, and Wardlaw are liable under section 15 as control persons of AFC. Generally, status as a control person is a question of fact. *See Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 485 (6th Cir. 1992); *but see Lilley v. Charren*, 936 F.Supp. 708, 716 (N.D.Cal.1996) (suggesting that conclusory allegations based solely on officer or director status are insufficient to establish control as a matter of law). Here, the Plaintiffs have adequately alleged controlling person liability against the Director Defendants. The Plaintiffs

alleged that these Defendants, directors of AFC with extensive participation in day-to-day affairs, possessed the power to control AFC's general operations. They also alleged that the Director Defendants, given the responsibility to sign AFC's SEC filings, including prospectuses and registration statements, had control over the specific offending statements. These allegations are sufficient to state a cause of action for controlling person liability under section 15.[12] The issue may be revisited by motions for summary judgment at an appropriate time.

### b. *Officer Defendants*

The Plaintiffs also claim that AFC officers Belatti, Frankel, Holbrook, and Wilkins are liable under section 15 as control persons of AFC. At this stage, Belatti, Holbrook, and Wilkins do not dispute the section 15 claim against them. Frankel, however, contends that the Plaintiffs' section 15 claim fails against him, as he alleges that he did not exercise control over AFC. Frankel served as executive vice president of AFC and as a member of its board of directors from 1992 to February 2001. Frankel resigned from his positions as officer and director of AFC before the initial public offering. Thus, Frankel contends, it may not be presumed that he had the requisite control over AFC, its accounting policies, or its public filings to establish liability under section 15. The Plaintiffs respond, in conclusory fashion, that "it is patently clear that Defendant Frankel had this power and influence" because Frankel's employment contract provided that he would act as a paid consul-

---

Figel, Kelvin Pennington, John M. Roth, Ronald P. Spogli, Peter Starrett, and William M. Wardlaw.

**11.** The Officer Defendants, as mentioned *supra*, are Frank J. Belatti, Gerald J. Wilkins, Dick R. Holbrook, and Samuel N. Frankel.

**12.** Farrar does not contend that his resignation from the board of directors distinguishes him from the other Director Defendants for the purposes of determining controlling person liability under section 15. Thus, the section 15 claim survives dismissal as against him.

tant to AFC's CEO after his resignation. (Pls.' Omnibus Resp. at p. 100). The Plaintiffs' argument seems strained; and Frankel's argument is appealing. But, it relies upon facts outside of the pleadings and matters of judicial notice. Whether he is a controlling person may be revisited by a motion for summary judgment at an appropriate time.

### c. Freeman Spogli

■ The Plaintiffs assert a claim against Freeman Spogli, alleging that the merchant banking firm exercised sufficient control over AFC to establish liability under section 15. The Defendants argue that the situation is analogous to that discussed by the Eleventh Circuit in *Theoharous v. Fong*, 256 F.3d 1219, 1227–28 (11th Cir.2001). In *Theoharous*, the plaintiffs asserted a controlling person claim against a significant minority shareholder of the offending corporation. The plaintiffs relied exclusively on two facts: (1) that the defendant owned 39% of the allegedly controlled corporation's stock; and (2) that an agreement guaranteed the defendant four of the nine directorships of the corporation. *Theoharous*, 256 F.3d at 1227. Since these facts only established a minority interest in the ownership and direction of the allegedly controlled corporation, the Eleventh Circuit held that these facts alone did not establish the defendant's liability as a controlling person of the offending corporation. *Id.* at 1227–28. Like the defendant in *Theoharous*, Freeman Spogli was a significant minority shareholder in AFC, holding a 47.8% interest in AFC following its initial public offering. The relationship between Freeman Spogli and AFC can be materially distinguished from the situation in *Theoharous*, though, as Freeman Spogli had a controlling interest in the direction of AFC. Six of the eleven directors of AFC were representatives of Freeman Spogli. Freeman Spogli also represented the controlling majority of

AFC's executive committee, an entity empowered to act on the behalf of the board of directors. Although these facts alone would suffice to state a cause of action against Freeman Spogli as a controlling person, the Plaintiffs also cite the roles of Roth and Spogli, partners in Freeman Spogli and directors of AFC, in the preparation and signing of AFC's SEC filings. These allegations are sufficient to state a cause of action against Freeman Spogli for controlling person liability under section 15. The issue may be revisited by motions for summary judgment at an appropriate time.

### C. Motion to Supplement the Record

■ The Plaintiffs move to supplement the record to include complaints filed by and against AFC Enterprises since the briefing of the Defendants' motions to dismiss. The Plaintiffs contend that these complaints—a declaratory judgment action filed against AFC by its insurer and a state action filed by AFC against its former auditor—bolster their allegations of scienter. In effect, the Plaintiffs are trying to amend their Consolidated Amended Class Action Complaint by incorporating the facts alleged in other actions. Allowing this would disrupt the orderly sequence of pleadings and motions contemplated by the Federal Rules of Civil Procedure and the Reform Act. The Plaintiffs' Motion to Supplement the Record should be denied.

### IV. CONCLUSION

For the reasons set forth above, the Outside Directors, Freeman Spogli, and Penman Defendants' Motion to Dismiss [Doc. 99] is GRANTED IN PART AND DENIED IN PART. The Underwriter Defendants' Motion to Dismiss [Doc. 100] is DENIED. The AFC Enterprises, Inc., Frank J. Belatti, Samuel N. Frankel, Dick R. Holbrook, and Gerald J. Wilkins Defendants' Motion to Dismiss is GRANTED IN

PART AND DENIED IN PART [Doc. 102]. The Plaintiffs' Motion to Supplement the Record [Doc. 132] is DENIED.

For the reasons set forth above, the Plaintiffs' Exchange Act and Rule 10b–5 accounting fraud claims against Belatti, Frankel, Holbrook and Pennington are dismissed. In addition, the insider trading claims against Belatti, Frankel, Holbrook, Freeman Spogli and Penman are dismissed. The Securities Act claim against Farrar is also dismissed. As a more adequately pleaded complaint may state claims against these Defendants, the Court must grant the Plaintiffs permission to file a second consolidated amended complaint within thirty (30) days from the docketing of this Order. Fed.R.Civ.P. 15(a); *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542–43 (11th Cir. 2002). No other defendants may be added and no other claims may be added without obtaining permission of the Court. If an amended complaint is not filed, these claims are dismissed with prejudice as to these Defendants.

SO ORDERED, this 28th day of December, 2004.